UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BETHANY A. LANGE,

                    Plaintiff,

    -vs-                      **No. 1:16-CV-00002 (MAT)**
                                   **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

---

## I. Introduction

Represented by counsel, Bethany A. Lange ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that in September 2012, plaintiff (d/o/b January 18, 1975) applied for DIB and SSI, alleging disability as of December 1, 2011. After her applications were denied, plaintiff requested a hearing, which was held before administrative law judge Bruce Mazzarella ("the ALJ") on May 21, 2014. The ALJ issued an

unfavorable decision on October 8, 2014. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Record**

The relatively sparse record reveals that plaintiff treated with Dr. Leeland Jones since approximately May 28, 2010. Dr. Jones diagnosed plaintiff with major depressive disorder, panic disorder, and PTSD, and prescribed various antidepressant medications. Dr. Jones' treatment records reveal complaints of panic attacks, depression, and trouble sleeping. Dr. Jones' notes do not reveal much about plaintiff's mental state, but indicate that her condition fluctuated. For example, in September 2011 it was noted that plaintiff was "doing better" but had gained 15 pounds in two months, whereas a July 3, 2012 treatment note indicated that plaintiff's medications had not been working for six months (Dr. Jones prescribed her a different antidepressant).

Dr. Jones submitted two medical assessments of plaintiff's functioning. In the first, dated July 18, 2011, he reported that plaintiff was making "good progress" in her psychiatric treatment, but she was "unable to work [at that] time." T. 217. Dr. Jones opined that plaintiff was moderately limited in her ability to maintain attention and concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior without exhibiting behavioral extremes. He opined that she was very limited in functioning in a work setting

2

at a consistent pace. In Dr. Jones' second opinion, dated January 16, 2012, he opined that plaintiff was limited as described above, but was additionally very limited in that she experienced panic attacks.

Dr. Gregory Fabiano completed a consulting psychiatric examination at the request of the state agency on November 21, 2012. Plaintiff reported that she was attending beauty school. She indicated that due to a domestic violence incident, she suffered from panic attacks associated with PTSD. On MSE, plaintiff's affect was flat and her recent and remote memory skills were mildly impaired, but otherwise the results were unremarkable. Dr. Fabiano opined that plaintiff could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress." T. 235. In his opinion, psychiatric problems, in themselves, did not appear significant enough to interfere with plaintiff's functioning on a daily basis.

On December 7, 2012, state agency psychologist Dr. Daniel Mangold reviewed plaintiff's record and opined that plaintiff "appear[ed] to retain the mental ability to perform simple competitive work," and her "ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and

3

superficial contact. Her ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." T. 93.

Dr. Jones' treatment notes subsequent to his medical assessments indicate that plaintiff continued to treat at his office, with nurse practitioner ("NP") Sarah Conboy, through March 2014. Results of MSEs recorded by NP Conboy were generally unremarkable. In September 2013, NP Conboy noted that plaintiff was "doing well" and had "made a salon in her house" T. 257. In November 2013, she noted that plaintiff reported that her relationships were good and that she was considering working toward a state board exam in cosmetics. Through the latest treatment note in March 2014, plaintiff reported that she was doing well and working toward her board exam.

On May 8, 2014, NP Conboy completed two reports on plaintiff's ability to perform work-related activities which were cosigned by Dr. Jumaid Hashim. The reports indicated that NP Conboy had treated plaintiff monthly since December 2012. NP Conboy opined that plaintiff was "[s]eriously limited, but not precluded,"[1] from remembering work-like procedures, maintaining attention for a two-

---

[1] The form defines this term as "seriously limited and less than satisfactory, but not precluded," with a "substantial loss of ability to perform the work-related activity." T. 266. The term "[u]nable to meet competitive standards" is defined as inability to "satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." Id.

4

hour segment, and maintaining regular attendance and being customary within customary tolerances. T. 266. She opined that she was "[u]nable to meet competitive standards" in completing a normal workday or week without interruptions from psychologically-based symptoms. Id. She also opined that she was "[l]imited but satisfactory" in various other areas of functioning. Id. In a handwritten comment, it was noted that plaintiff's "condition [was] improving but very possible for decline [with] change in stress," and "[a]t [that] time [working] [was] not deemed best for her mental health." T. 267.

NP Conboy noted that plaintiff was prescribed Adderall and Trazodone and was responding well to the Aderall. She noted that plaintiff did not "do well under pressure." T. 268. In NP Conboy's opinion, plaintiff was moderately limited in maintaining social functioning; markedly limited in concentration, persistence, or pace; and had suffered one or two repeated episodes of decompensation within a 12-month period.

**IV. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date. At step two, the ALJ found that plaintiff had the following medically determinable impairments: post-traumatic stress disorder ("PTSD") and attention deficit hyperactivity disorder

5

("ADHD"). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she was limited to "simple repetitive routine tasks" and could have "only occasional contact with the general public and co-workers." T. 24. At step four, the ALJ found that plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, there were jobs existing in the national economy which plaintiff could perform. Accordingly, he found her not disabled.

**V. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Development of the Record**

Plaintiff contends that the record is not fully developed, arguing that treatment notes from Dr. Hashim are missing. As noted above, NP Conboy indicated in a May 8, 2014 report that plaintiff had treated with her monthly since May 2012. Contrary to

6

plaintiff's assertion, however, these notes appear in the record. See T. 247-265. In fact, NP Conboy's treatment notes constitute a large part of the relatively scant substantive medical evidence in the administrative record. Plaintiff herself testified that she had never treated with Dr. Hashim, but treated with NP Conboy first at Dr. Jones' office and then at Dr. Hashim's office. See T. 52-53. According to plaintiff's testimony, NP Conboy was currently prescribing her medication. It is clear from a review of the record that it is complete, with no obvious gaps, and therefore the ALJ did not err in failing to develop the record as plaintiff argues. See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (internal quotation marks omitted).

### B. RFC Finding

Plaintiff argues that the ALJ impermissibly substituted his own judgment for medical opinion evidence and that therefore the RFC finding was unsupported by substantial evidence. Specifically, plaintiff contends that the only opinion to which the ALJ gave significant weight, the consulting examining opinion Dr. Gregory Fabiano, does not support the RFC finding. For the reasons discussed below, however, the Court finds that the RFC finding was based on substantial evidence in the record.

The ALJ gave "significant" weight to Dr. Fabiano's consulting examining opinion, which, as noted above, opined that plaintiff had

no limitations *whatsoever* related to mental functioning. The ALJ noted that he gave the opinion significant weight because it was "consistent to what [plaintiff] told her treating sources" and generally consistent with Dr. Fabiano's examination of plaintiff. T. 26.[2] The ALJ stated that he did not give "controlling" weight to the opinions of plaintiff's treating sources or Dr. Mangold, because he found the opinions were "inconsistent with treatment notes of [plaintiff] in cosmetology school and improvement." T. 25. The ALJ also found these opinions "inconsistent with admitted ADL's[,] [her] ability to care for [her] boyfriend who was disabled by back surgery and grandmother in nursing home[,] no psychiatric symptoms found and a Global Assessment of Functioning (GAF) score of 60[,] and improvement." Id. (internal citations omitted). Notably, the ALJ did not say that he rejected these opinions entirely, but merely that he gave them less than controlling weight.

Although the ALJ should have stated with more specificity the weight given to the opinions of plaintiff's treating physicians and Dr. Mangold, his RFC is nevertheless supported by substantial evidence in the record. This evidence includes Dr. Fabiano's opinion containing no restrictions, as well as the opinions of the treating sources and Dr. Mangold that plaintiff had limitations in handling routine tasks and contact with others – limitations which

---

[2] Although in weighing the opinion the ALJ stated that Dr. Fabiano "opined that [plaintiff's psychiatric symptoms] *would* significantly interfere with her ability to function" (emphasis added), elsewhere in the ALJ's decision he noted that Dr. Fabiano in fact opined the opposite, and based on the outcome of the decision, it appears that the above quoted text was a typographical error. T. 26.

the ALJ included in the RFC. See Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)); Younes v. Colvin, 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015) ("Consultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them.") (citing SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")).

While the "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion," Rosa, 168 F.3d at 79, "the ALJ's RFC finding need not track any one medical opinion." Id.; see O'Neil v. Colvin, 2014 WL 5500662, *6 (W.D.N.Y. Oct. 30, 2014) (citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.")). Accordingly, the Court finds that the RFC finding was based on substantial evidence in the record.

**B.   Failure to Account for Limitations Related to Stress**

Plaintiff argues that the ALJ failed to account for limitations related to stress in the RFC finding. "Because stress

9

is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." Stadler v. Barnhart, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (internal quotation marks omitted) (citing SSR 85–15); see also Welch v. Chater, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments").

The opinions given by plaintiff's treating sources indicate that, in their estimation, plaintiff had problems dealing with stress. However, the consulting examiner opined that plaintiff could adequately deal with stress in the workplace. Moreover, as the ALJ reasoned, plaintiff's treatment notes were inconsistent with the restrictive opinions given by Dr. Jones and NP Conboy. As the ALJ noted, treatment notes indicated that plaintiff attended and graduated from cosmetology school and worked inside and outside of her home at points during the relevant time period, including part-time work at a grocery store. Moreover, treatment notes revealed largely unremarkable MSEs whenever results of such examinations were recorded. The Court thus finds that on the facts of this particular record, the ALJ did not commit reversible error in failing to specifically address plaintiff's stress in the RFC finding. See, e.g., Kotasek v. Comm'r of Soc. Sec., 2009 WL

1584658, *13 (June 3, 2009) (ALJ's RFC finding, which limited contact with other individuals, was supported by substantial evidence where medical opinions indicated that plaintiff had stress stemming from social phobias); see also <u>Steffens v. Colvin</u>, 2015 WL 9217058, *4 (W.D.N.Y. Dec. 16, 2015).

## VI. Conclusion

For the foregoing reasons, the ALJ's finding that plaintiff is not disabled is supported by substantial evidence in the record. Plaintiff's motion for judgment on the pleadings (Doc. 7) is therefore denied and the Commissioner's motion (Doc. 8) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    April 25, 2017
           Rochester, New York.